IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


ANNA LISA HARLINSKI                                                    PLAINTIFF

              v.                        Civil No. 09-2134

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                        DEFENDANT

**MEMORANDUM OPINION**

## I.   <u>Procedural Background</u>

Plaintiff, Anna Lisa Harlinski, brings this action seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disabled adult child ("DAC") benefits pursuant to Title II of the Social Security Act ("the Act"). 42 U.S.C. § 402(d).

Plaintiff protectively filed her DAC application on April 24, 2006, alleging disability beginning on January 1, 2001, when she was twelve years old. Tr. 95-99, 104, 120-22, 132. Plaintiff applied for DAC benefits based on the earnings record of her father, Peter Harlinski, III. Tr. 95-97. At the time of filing, Plaintiff was seventeen years old. Tr. 95-97. She completed high school with some special education and homebound instruction classes. Tr. 137. She alleges disability due to the following impairments: bipolar disorder, attention-deficit/hyperactivity disorder ("ADHD"), depression, chronic back pain, and a learning disability. Tr. 41-42, 132, 178.

Plaintiff's application was denied at both the initial and reconsideration levels. Tr. 50-54, 56-59. An administrative hearing was held on December 22, 2008. Tr. 7-33. Plaintiff was present at the hearing and represented by counsel. Tr. 7-33. In a written decision dated April 13, 2009, the

Administrative Law Judge ("ALJ") found that Plaintiff was not disabled within the meaning of the Act.  Tr. 36-49.  On October 7, 2009, the Appeals Council declined Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3.  Plaintiff now seeks judicial review of that decision.

## II.   **Factual Background**

As a child, Plaintiff was diagnosed with a language learning disability (specifically, reading), ADHD, and oppositional defiant disorder ("ODD").  Tr. 239-40, 242.  As a result, she received intensive one-on-one language and reading instruction for two hours a day from first through fifth grade.  Tr. 239.  She also took a variety of medications for ADHD, including Cylert and Ritalin.  Tr. 242, 253.

On March 4, 2003, Plaintiff saw Michael W. Ernst, D.O., for a psychiatric assessment.  Tr. 267-68.  Plaintiff had a long history of behavioral problems, including truancy, destruction of property, and physical aggression.  Tr. 267.  She was reportedly hospitalized for six days at Gateway Center in December 2002 due to violent behavior with suicidal threats.  Tr. 267.  She had been prescribed Seroquel, but refused to take her medication.  Tr. 267.

Plaintiff was alert and oriented.  Tr. 268.  Her memory was intact, but her attention and concentration were poor.  Tr. 268.  Plaintiff's thoughts were vague and guarded and her mood was irritable.  Tr. 268.  She did not report any hallucinations or delusions.  Tr. 268.  Dr. Ernst diagnosed Plaintiff with ODD, R/O bipolar disorder, and cannabis abuse and estimated her GAF score at 45.  Tr. 268.  He prescribed Trileptal to help with Plaintiff's anger and behavioral problems.  Tr. 268.  Subsequent progress notes reveal improvement in Plaintiff's behavior, although she still experienced some impulse control problems.  Tr. 269-75.  In October 2003, Plaintiff was doing "fairly well," but

had recently been suspended from school and arrested for underage drinking.  Tr. 272-73.  Dr. Ernst added Lexapro and Trazodone to Plaintiff's medications.  Tr. 272.  On November 20, 2003, Plaintiff was doing well on her medications and her grades had improved, but she continued to have occasional behavioral problems.  Tr. 279-80.

In April 2004, Plaintiff's mother reported that Plaintiff had become very defiant and disrespectful.  Tr. 276.  She reportedly burned herself with cigarettes and refused to take her medication.  Tr. 276.  In May 2004, Plaintiff was arrested for violating her probation.  Tr. 282.  By July and August 2004, Plaintiff was exhibiting greater self-control and was "doing better" overall.  Tr. 277, 282.  Dr. Ernst noted that she was stable when she took her medication consistently.  Tr. 284.

In December 2004, Plaintiff was suspended for cursing at a teacher.  Tr. 286.  Otherwise, her grades were good and she got along with her teachers.  Tr. 286.  At her last visit in March 2005, Plaintiff reported good grades in school.  Tr. 287.

Plaintiff went to Taylorville High School in Illinois.  In ninth grade, Plaintiff received all Fs her first semester.  Tr. 191.  During her second semester, she earned Cs in English, math, and physical education, and Bs in biology and geography.  Tr. 191.  In tenth grade, Plaintiff received Bs in keyboarding, life skills, English, physical education, and health, and an A in math.  Tr. 191.  During her second semester, she received all Bs.  Tr. 191.  During eleventh grade, Plaintiff took special education courses and received Cs in history and English, and Bs in civics and math.  Tr. 191.  During her second semester, she received Bs in history and civics, and As in English, math and science.  Tr. 191.  During her senior year, Plaintiff received a C+ in life skills, a C- in math, a B- in science, a C- in world geography, and a C- in American problems.  Tr. 192.  As of May 2006,

Plaintiff was receiving homebound behavioral instruction five hours per week.  Tr. 189.

In the classroom, Plaintiff had trouble following rules and being respectful to teachers.  Tr. 205.  She demonstrated deficits in reading comprehension, math and writing.  Tr. 205.  In a Functional Behavioral Assessment, Plaintiff was noted to respond with inappropriate words or actions when instructed on what to do.  Tr. 220.  However, it was also noted that she could be very pleasant to talk to and did very well academically when she put forth effort.  Tr. 220.  On January 17, 2006, Plaintiff was administered the Woodcock-McGrew-Werder Mini-Battery.  Tr. 189.  She tested on an 8.5 reading level, a 7.9 math level, and a 4.3 written language level.  Tr. 189.

From September 2005 through July 2007, Plaintiff saw David Kiel, M.D., with complaints of back pain.  Tr. 298.  She was started on Naprosyn and Flexeril, and given instructions on back extension exercises. Tr. 298.  X-rays of Plaintiff's lumbar spine were negative for acute bony injury.  Tr. 309.  On February 6, 2006, Plaintiff was taking ibuprofen for chronic back pain.  T. 290.  In June 2006, Dr. Kiel noted muscle spasms in the low lumbar area and lower thoracic posterior chest wall area.  Tr. 349.  Dr. Kiel assessed Plaintiff with thoracic low back pain and muscle spasms.  Tr. 349.  He prescribed Keflex, Naprosyn, and Flexeril and recommended stretching exercises.  Tr. 349.  In July 2006, Plaintiff complained of continuing back pain.  Tr. 347-48.  Physical examination yielded pain with palpation, but no deformity, bruising or ecchymosis were noted.  Tr. 348.  Straight leg lifts were negative.  Tr. 348.  An x-ray of Plaintiff's lumbar spine was unremarkable.  Tr. 348, 352.  Dr. Kiel refilled Plaintiff's prescriptions for Naprosyn and Flexeril and advised her to do back extension exercises.  Tr. 348.  She was later switched to Norflex and then to Darvocet.  Tr. 347, 387.

On July 6, 2006, Plaintiff was referred to Michael Trieger, Psy.D., for a psychological evaluation.  Tr. 322-25.  She related her history of anger outbursts and behavioral problems, and

stated that she was expelled from school and finished on home bound instruction. Tr. 323. When asked about employment, Plaintiff stated that she had worked two jobs, but they both ended after only a week or two due to confrontations with supervisors and co-workers. Tr. 323.

Plaintiff was oriented to person, place, date and time. Tr. 323. Her thoughts were adequately organized, relevant, and coherent, and her memory was intact. Tr. 323-24. Her attention and concentration were adequately focused, but her judgment was impulsive. Tr. 324. Dr. Trieger estimated Plaintiff's intelligence to be within the average range. Tr. 324. He noted that although Plaintiff's presentation was unremarkable, her history was consistent with bipolar disorder. Tr. 324. He diagnosed her with bipolar disorder (by history) and ADHD (by history) and estimated her GAF score at 62. Tr. 324-25.

In a Psychiatric Review Technique dated July 29, 2006, R. Leon Jackson determined that Plaintiff did not meet the criteria for Listings 12.02 (organic mental disorders) and 12.08 (personality disorders), as she had only moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration. Tr. 326-39. In a Mental Residual Functional Capacity ("RFC") Assessment, Jackson found moderate limitations in Plaintiff's ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, interact appropriately with the general public, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 340-41. He found no other limitations. Tr. 340-41.

On July 7, 2007, x-rays were taken of Plaintiff's thoracic and lumbosacral spine. Tr. 402-03. Results were normal. Tr. 403. An MRI of Plaintiff's lumbar spine, performed on June 13, 2007, revealed a small disc protrusion at L5-S1, but was otherwise normal. Tr. 367. An MRI of Plaintiff's thoracic spine was normal. Tr. 401. Plaintiff was referred to Debra K. Buckles, a physical therapist, on June 29, 2007. Tr. 364-66, 388-89. Buckles gave Plaintiff a home exercise program for abdominal and paraspinal strengthening and educated her regarding body mechanics and proper alignment. Tr. 366. It does not appear that Plaintiff kept any of her following appointments. Tr. 363.

On November 3, 2008, Plaintiff was administered the Test of Adult Basic Education ("TABE") by the Department of Human Services. Tr. 557. Her scores were consistent with a 3.1 grade level in reading, a 1.2 grade level in math computation, a 2.2 grade level in applied math, a 1.3 grade level in language, a 1.9 grade level in total math, and a 2.0 total battery. Tr. 557.

Plaintiff was treated at Western Arkansas Counseling and Guidance Center from November 2008 through February 2009. Tr. 559-89. She presented with complaints of anger, anxiety, depression, and inability to cope with her life situation. Tr. 560. Plaintiff's social worker, Kellie Thompson, LCSW, diagnosed her with ADHD in Axis I and borderline personality disorder in Axis II. Tr. 563. In November 2008, she estimated Plaintiff's GAF score at 38. Tr. 563. Thompson found very serious limitations in Plaintiff's peer/social skills, serious limitations in managing time, family relationships, and coping skills, and moderately serious limitations in communication, problem solving, and behavioral norms. Tr. 562. After three months of counseling, Thompson estimated Plaintiff's GAF score at 42. Tr. 583.

On January 10, 2009, Plaintiff saw Fayz Hudefi, M.D., a staff psychiatrist at Western Arkansas Counseling and Guidance.  Tr. 574-76.  On examination, Plaintiff was alert and oriented. Tr. 575.  She exhibited no psychotic or aggressive behaviors and was cooperative throughout the session.  Tr. 575.  Plaintiff's mood was "okay," her affect was appropriate, and her thought processes, content, and memory were intact.  Tr. 575.  Her attention and concentration and judgment and insight were also intact.  Tr. 575.  Dr. Hudefi diagnosed Plaintiff with depression NOS and anxiety NOS in Axis I and borderline personality disorder in Axis II.  Tr. 575.  He estimated Plaintiff's GAF score at 60-65.  Tr. 575.  Dr. Hudefi noted that Plaintiff had not taken medication since 2006 and prescribed Zoloft and Trazodone.  Tr. 574-76.

## III.   <u>Applicable Law</u>

The court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003).  "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)).  In determining whether evidence is substantial, the court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it.  *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).  If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for childhood insurance benefits, a claimant must be the unmarried child of an insured person who is entitled to old-age or disability benefits or who is deceased. 20 C.F.R. § 404.350(a). The claimant must also demonstrate, amongst other things, that she is under the age of eighteen, or that she is eighteen years or older and had a disability that began before the age of twenty two. *Id.* Once these initial requirements are met, the Commissioner makes a disability determination using the adult standard.[1]

Under the adult disability standard, the Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV.   Discussion

The ALJ determined that Plaintiff had not attained the age of twenty two as of January 1, 2001, the alleged onset date. Tr. 41. At step one, she found that Plaintiff had not engaged in

---

[1] DAC benefits differ from child's supplemental security income ("SSI") benefits. In SSI cases, the ALJ undergoes a three-step sequential analysis to determine if a child is disabled under the Act. 20 C.F.R. § 416.924. In DAC cases, benefits are determined using the adult standard. 20 C.F.R. § 404.1505.

substantial gainful activity during the relevant time period.  Tr. 41.  At step two, she determined that Plaintiff suffered from the following severe impairments: bipolar disorder, ADHD, and a learning disability.  Tr. 41-42.  At step three, she found that Plaintiff's impairments did not meet or medically equal a listed impairment.  Tr. 42-44.  At step four, the ALJ found that Plaintiff could perform unskilled work where interpersonal contact is incidental only.  Tr. 44-47.  At step five, after receiving vocational expert ("VE") testimony, she determined that there are jobs existing in significant numbers in the national economy that Plaintiff could perform.[2]  Tr. 48-49.  Accordingly, she found that Plaintiff was not disabled under the Act.  Tr. 49.

Plaintiff contends the Commissioner's decision is not supported by substantial evidence. Specifically, Plaintiff raises the following issues: (1) whether the ALJ erred in her severity determination; (2) whether substantial evidence supports the ALJ's RFC determination; (3) whether the ALJ properly assessed Plaintiff's credibility; and (4) whether the ALJ satisfied her duty to fully and fairly develop the record.  Pl.'s Br. 6-19, ECF No. 11.  For the following reasons, we find that substantial evidence supports the ALJ's determination at each step of the sequential evaluation.

A.  Plaintiff's Severe Impairments

Plaintiff contends the ALJ erred at step two of the sequential analysis by failing to find her alleged back impairment and obesity to be severe.  Pl.'s Br.  We disagree.

Step two of the regulations involves a determination, based on the medical evidence, whether the claimant has an impairment or combination of impairments that is severe.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  A severe impairment is one which significantly limits a

_____

[2] The VE testified that, based on the ALJ's hypothetical, Plaintiff could perform representative jobs such as bench assembler, of which there are 300,000 jobs in the national economy and 6,300 jobs in Arkansas, hand packager, of which there are 29,000 jobs in the national economy and 300 jobs in Arkansas, or poultry eviscerator, of which there are 44,000 jobs in the national economy and 5,000 jobs in Arkansas.  Tr. 48.

claimant's physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have "no more than a minimal impact on her ability to work." *Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir.2001), *citing Nguyen v. Chater,* 75 F.3d 429, 430-31 (8th Cir.1996).  Although the Plaintiff has the burden of establishing a severe impairment or impairments, the burden at this stage is not great.  *Caviness*, 250 F.3d at 605.

Substantial evidence supports the ALJ's determination that Plaintiff's back impairment and obesity cause no more than minimal limitation on her ability to perform basic work activities.  Tr. 42.  An MRI of Plaintiff's lumbar spine, performed on June 13, 2007, revealed a small disc protrusion at L5-S1, but no compression of the nerve roots or thecal sac.  Tr. 367.  An MRI of Plaintiff's thoracic spine was normal.  Tr. 401.  X-rays of Plaintiff's lumbosacral spine were also normal.  Tr. 402-03.  Plaintiff testified that her back pain began when she was ten or eleven years old yet she worked a total of two jobs, neither of which she left due to back pain.  Tr. 15, 42.  Moreover, she did not seek medical attention for back pain until 2005, four years after her alleged onset date.  Tr. 298. Additionally, although Plaintiff has taken pain medication for her back pain, she did not comply with her back exercise program and did not complete her physical therapy.  Tr. 347, 363.  *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (claimant's failure to follow course of treatment indicated that her joint pain was not as severe as alleged).

Regarding Plaintiff's obesity, Social Security Ruling ("SSR") 02-1p states that obesity is considered a medically determinable impairment and should be considered when evaluating whether a claimant is disabled.  SSR 02-1p, 67 Fed. Reg. 57,859, 2000 WL 628049 (Sept. 12, 2009).  The ALJ acknowledged Plaintiff's obesity, but found no evidence that it worsened her back impairment

-10-

or otherwise limited her ability to perform basic work activities.  Tr. 42.  Moreover, Plaintiff did not allege obesity as a basis for disability in her applications and only indirectly addressed it at the administrative hearing.  *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003) (an ALJ is not obligated to investigate claims not presented at the time of the application for benefits and not offered at the hearing as a basis for disability).  Overall, the medical evidence of record suggests that Plaintiff's back pain and obesity have no more than a minimal impact on her ability to perform work.  *Nguyen*, 75 F.3d at 431.  For these reasons, we find that substantial evidence supports the ALJ's severity determination.

B. <u>RFC Determination</u>

Plaintiff contends the ALJ's RFC determination does not adequately reflect her mental limitations.  Pl.'s Br. 14-18.  We disagree.  At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC.  *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. § 404.1545(a)(1).  The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Masterson*, 363 F.3d at 737.  The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question."  *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).  Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be some medical evidence to support the ALJ's determination.  *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

Specifically, Plaintiff argues that her GAF scores were generally below 50 and, as such, she would be unable to sustain any work activity.  Pl.'s Br. 15, 17.  In support of her argument, Plaintiff

relies on the vocational expert's testimony that an individual with a GAF of 50 or less would be precluded from all work activity. Tr. 32. We find several flaws in Plaintiff's analysis.

First, Plaintiff was not consistently given GAF scores below 50. Dr. Trieger and Dr. Hudefi estimated Plaintiff's GAF to be within the 60-65 range, indicating mild to moderate symptoms.[3] Tr. 324-25, 575. Additionally, both Dr. Trieger and Dr. Hudefi noted that Plaintiff's thoughts were organized, relevant and coherent, her memory was intact, and she was able to sustain attention and concentration. Tr. 323-24, 575. Dr. Trieger estimated Plaintiff's intelligence to be within the average range. Tr. 324. He noted that her presentation was "unremarkable." Tr. 324. He diagnosed her with bipolar disorder (by history) and ADHD (by history) and estimated her GAF score at 62. Tr. 324-25. Plaintiff saw Dr. Hudefi while undergoing counseling at Western Arkansas Counseling and Guidance. Tr. 574-76. He diagnosed Plaintiff with depression NOS and anxiety NOS in Axis I and borderline personality disorder in Axis II. Tr. 575. He estimated Plaintiff's GAF score at 60-65 and noted that she had not taken medication since 2006. Tr. 575. He prescribed Zoloft and Trazodone and mentioned the possibility of adding a mood stabilizer if Plaintiff did not demonstrate significant improvement in two months. Tr. 576.

Additionally, Dr. Ernst gave Plaintiff an estimated GAF score of 45 *before* she was treated with medication for her behavioral problems. Tr. 267-68. Following treatment with Trileptal, Dr. Ernst continually noted improvement in Plaintiff's behavior. Tr. 269-87. By July and August 2004, Plaintiff was exhibiting greater self-control and was "doing better" overall. Tr. 277, 282. Dr. Ernst

---

[3] A GAF score of 60 is consistent with moderate symptoms or moderate difficulty in social, occupational, or school functioning. AM. PSYCHIATRIC ASS'N. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 34 (4th ed., 2000). A GAF score of 61-70 is indicative of some mild symptoms or some difficulty in social, occupational, or school functioning, but generally the individual is functioning pretty well. *Id.*

noted that she was stable when she took her medication consistently.  Tr. 284.  *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (an impairment which can be controlled by treatment or medication is not considered disabling).

Plaintiff draws our attention to the GAF scores given by Kellie Thompson, a licensed social worker at Western Arkansas Counseling and Guidance Center.  Plaintiff saw Thompson for weekly therapy sessions from November 2008 through February 2009.  Tr. 559-89.  In November 2008, Thompson estimated Plaintiff's GAF score at 38, indicating some impairment in reality testing or communication or major impairment in several areas. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 34; Tr. 563.   Thompson found very serious limitations in Plaintiff's peer/social skills, serious limitations in managing time, family relationships, and coping skills, and moderately serious limitations in communication, problem solving, and behavioral norms.  Tr. 562. She noted relative strengths in Plaintiff's ability to receive treatment, take medication consistently, work cooperatively with others, follow directions, maintain consistent behavior, resolve conflicts, complete assigned tasks, manage time effectively, and analyze problems and develop solutions.  Tr. 562.  After three months of counseling, Thompson estimated Plaintiff's GAF score at 42.  Tr. 583.

The ALJ discounted Thompson's assessment in favor of the medical opinions of Dr Ernst, Dr. Trieger, and Dr. Hudefi.  Tr. 47.  Substantial evidence supports this determination.  Although Thompson is certainly a medical source to be considered, her overly restrictive GAF scores are not supported by the weight of the objective medical evidence.  20 C.F.R. § 404.1513(d); 20 C.F.R. § 404.1545(a) ("We will assess your RFC based on all the relevant evidence in your case record").

Significantly, no physician in this case, treating or otherwise, concluded that Plaintiff was unable to work.  *See Johnston v. Apfel*, 210 F.3d 870, 873 (8th Cir. 2000) (no physician expressed

any opinion that the claimant was disabled).   After considering all the relevant evidence, we conclude that substantial evidence supports the ALJ's determination that Plaintiff can perform unskilled work where interpersonal contact is incidental only. *Roberts v. Apfel,* 222 F.3d 466, 469 (8th Cir. 2000) (ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence).  Plaintiff failed to demonstrate that she is unable to perform substantial gainful activity. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant").   Accordingly, substantial evidence supports the ALJ's RFC assessment.

C.  Credibility Assessment

Plaintiff further argues that the ALJ erred in her credibility determination.  Pl.'s Br. 6-14. We disagree.  When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009).   When making a credibility determination, the ALJ is "not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations." *Polaski*, 739 F.2d at 1322.  However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole.  *Id.*

The ALJ cited several factors weighing against Plaintiff's credibility.  First, as earlier noted, Plaintiff's symptoms improved with consistent treatment and medication.  Tr. 45; *Estes*, 275 F.3d

-14-

at 725 (an impairment which can be controlled by treatment or medication is not considered disabling).  Dr. McCoy found that Plaintiff performed well in school when treated for ADHD, and Dr. Ernst observed that Plaintiff performed well in school when treated for her bipolar disorder.  Tr. 47, 240-41, 274, 280, 284.   Additionally, Plaintiff failed to take her medication consistently. *Guziewicz v. Barnhart*, 114 Fed. Appx. 267, 269 (8th Cir. 2004) (ALJ may consider noncompliance with medical treatment in discounting subjective complaints).   Dr. Ernst noted Plaintiff's noncompliance on several occasions.  Tr. 267, 275-76, 278.  On October 24, 2006, Dr. Kiel stated that Plaintiff was "basically medically noncompliant" with her Lexapro.  Tr. 398.  In January 2009, Dr. Hudefi noted that Plaintiff had not taken medication since 2006.[4]  Tr. 574-76.  Finally, the ALJ considered Plaintiff's work attempts during the relevant time period.  Tr. 47.  She found that situational factors, including working with the public, contributed to Plaintiff's failed work attempts.  Tr. 47.  Under the ALJ's RFC, Plaintiff would be limited to unskilled work where interpersonal contact was incidental only.  Tr. 47.

In this instance, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and gave compelling reasons for discounting Plaintiff's subjective complaints. *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) ("We will defer to an ALJ's credibility finding as long as the 'ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so.'").  As such, we find no error in the ALJ's credibility determination.

---

[4] The court is cognizant of the Eighth Circuit's holding in *Pate-Fires v. Astrue*, 564 F.3d 935, 946 (8th Cir. 2009) (ALJ must take into account whether a mentally ill claimant's failure to comply with prescribed medication results from the mental illness itself).  Unlike the situation in *Pate-Fires*, however, the facts here demonstrate that Plaintiff was fully aware of her mental illness and the need for medication.  Tr. 562.

D.  Duty to Fully and Fairly Develop the Record

In his final argument, Plaintiff contends the ALJ failed to fully and fairly develop the record concerning his mental impairments.  Pl.'s Br. 17.  We disagree.

The ALJ has a duty to fully and fairly develop the record, even if a claimant is represented by counsel.  *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998).  "It is well-settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician.  *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000).  While the Secretary is under no duty to go to inordinate lengths to develop a claimant's case, he must "make an investigation that is not wholly inadequate under the circumstances."  *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (quoting *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)).  There is no bright-line test for determining when the Secretary has failed to adequately develop the record; the determination must be made on a case by case basis.  *Battles*, 36 F.3d at 45 (quoting *Lashley v. Secretary of Health & Human Serv.,* 708 F.2d 1048, 1052 (6th Cir.1983)).

Plaintiff argues that the ALJ was obligated to obtain a mental RFC assessment from a treating physician.  Pl.'s Br. 17.  We are cognizant that there is only one mental RFC in the transcript, which was completed by a non-treating physician.  *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (the assessment of a doctor who evaluates a claimant once or not at all does not usually constitute substantial evidence).  However, the record is wholly devoid of any evidence, from treating and non-treating physicians alike, that Plaintiff's mental limitations are of disabling severity.  Moreover, Plaintiff has demonstrated no prejudice or injustice as a result of this alleged failure to develop the record.  *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (unfairness or prejudice is necessary

-16-

for a reversal due to failure to develop the record). We find that sufficient evidence existed for the ALJ to make a fully-informed decision as to Plaintiff's alleged disability. *Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005) (record contained sufficient evidence from which to make an informed decision). Accordingly, we find that the ALJ satisfied her duty to fully develop the record.

## V.  <u>Conclusion</u>

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determination at each step of the disability evaluation process, and thus the decision should be affirmed. Accordingly, Plaintiff's complaint should be dismissed with prejudice.

DATED this 23rd day of November 2010.

*/s/ J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE